# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ATLANTIC SPECIALTY INSURANCE
COMPANY,

        **Plaintiff,**

v.                                           **Case No:  6:16-cv-1751-Orl-31KRS**

SERGEY PASTUKOV,

        **Defendant.**

_____

## ORDER

This matter comes before the Court on the Motion for Summary Judgment (Doc. 46) filed by the Defendant, Sergey Pastukov, the response in opposition (Doc. 55) filed by the Plaintiff, Atlantic Specialty Insurance Company (henceforth, "Atlantic"), the reply (Doc. 58) filed by Pastukov, and the sur-reply (Doc. 59) filed by Atlantic.

### I.    Background

This is an insurance coverage dispute involving a group policy issued by Atlantic to the National Independent Truckers and Contractors Association, Inc. Group Insurance Trust ("NITACA Trust").   That policy – henceforth, the "NITACA Policy" – allows independent truck drivers who are members of the NITACA to obtain occupational accident coverage.   The Defendant, Pastukov, drove a truck for non-party National Shipping, Inc. ("National Shipping"). Through National Shipping, he applied for coverage under the NITACA Policy.   National Shipping submitted Pastukov's application to its broker, PDL Broker, Inc. ("PDL").   PDL then

submitted the application to 5Star Specialty Programs ("5Star"), which was Atlantic's agent and the Program Administrator for the NITACA Policy.[1]

In the early morning hours of May 14, 2015, while driving for National Shipping, Pastukov was involved in a serious accident. (Doc. 55 at 3). As a result of the accident, he was hospitalized for six weeks and incurred significant medical bills. (Doc. 46 at 23). On May 29, 2015, a certificate of insurance ("COI") was issued by 5Star to Pastukov.[2] The first page of the COI included spaces to be filled in with information such as "Group Policy Number," "Covered Person," and "Monthly Premium." (Doc. 146-1 at 128). Though the first page of the COI shows that it was not processed until May 29, 2015, two of the spaces – one labeled "Coverage Effective" and another labeled "Transaction Effective Date" – were filled in with "05/14/2015" – *i.e.*, the date of Pastukov's accident. (Doc. 146-1 at 128). Atlantic contends, and Pastukov does

---

[1] Throughout this case, the parties have disagreed as to whether Pastukov's application was received by National Shipping's agent, PDL Broker, Inc. ("PDL"), on May 13, 2015 or May 14, 2015. For purposes of this motion, Atlantic is not disputing Pastukov's contention that National Shipping sent his application to PDL on May 13, 2015. (Doc. 53 at 7).

[2] The parties disagree as to what constitutes the "COI" in this case. (Doc. 55 at 5). Atlantic contends that it is a thirty-page document (Doc. 46-1 at 128-157). Pastukov refers to only the first of those 30 pages as the COI, with the remaining 29 pages constituting what Pastukov calls the "Master Policy". (Doc. 46 at 20). Neither party contends that this issue will affect the outcome of this case; it may be that Atlantic has simply incorporated the policy and the COI into a single document. But for the sake of consistency, the Court must settle on one, and the Court adopts Atlantic's terminology. It is true that the single page Pastukov points to as the COI (Doc. 46-1 at 128) is titled "Certificate of Insurance." And the pages identified by Pastukov as a separate policy (Doc. 46-1 at 129-57) include information one would expect to find in such a document, such as eligibility and premium information. But the first two pages of what Pastukov identifies as the Master Policy are also titled "Certificate of Insurance." (Doc. 46-1 at 129, 130). And the single page Pastukov identifies as the COI directs the reader to "[s]ee the attached Schedule of Benefits and Certificate of Insurance" for information about coverage. (Doc. 46-1 at 128). Finally, the "General Definitions" section of what Pastukov refers to as a separate policy defines the word "Policy" as "the Occupational Accident Insurance Policy upon which this Certificate is based." (Doc. 146-1 at 152). Accordingly, it seems that the 30 pages at issue were intended to constitute a single COI, and the Court will refer to it as such in this opinion.

not dispute, that National Shipping learned of the accident the same day it occurred. (Doc. 55 at 3-4).

On or about October 27, 2015, Pastukov submitted a proof of loss form to Atlantic regarding the May 14, 2015 accident. Subsequently, Atlantic denied Pastukov's claim. In doing so, Atlantic cited three bases for the denial: first, because his coverage did not take effect until processing of his application was completed on May 29, 2015; second, because Pastukov had never been eligible for coverage under the NITACA Policy; and third, because Pastukov missed the policy-mandated deadline for filing his proof of loss.

On October 11, 2016, Atlantic filed this suit against Pastukov, seeking a declaratory judgment that he was not entitled to coverage for the accident. (Doc. 1). On December 7, 2016, Pastukov filed his answer (Doc. 7). He also filed a counterclaim alleging negligent misrepresentation and breach of contract and seeking a declaration that he was entitled to coverage. (Doc. 7 at 3-18). By way of the instant motion, Pastukov seeks summary judgment only as to his counterclaim for declaratory relief.

In addition to the three original bases offered for denial of Pastukov's claim, Atlantic now also argues that the claim must be denied because of a public policy barring insurance companies from covering known losses. However, because the Court finds that Pastukov was never eligible for coverage, this opinion will address only that issue.

## II. Legal Standards

### A. Summary Judgment

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106

S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

## B.    Declaratory Judgment

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201-02, provides in pertinent part that in a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, regardless of whether further relief is or could be sought.   28 U.S.C. §2201(a).   An actual controversy exists when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).   The "actual controversy" requirement is jurisdictional, and the party seeking a declaratory judgment bears the burden of establishing the existence of an actual case or controversy.   *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993).

## C.    Insurance policies

Under Florida law, interpretation of an insurance contract is a question of law to be decided by the court.   *Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985) (citations omitted).

> Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written. In construing insurance contracts, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect. Courts should avoid simply concentrating on certain limited provisions to the exclusion of the totality of others. However, policy language is considered to be ambiguous if the language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage.

*Washington Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013) (internal citations and quotations omitted).   Courts are to liberally construe ambiguous language in favor of coverage and strictly against the insurer.   *Id.* at 949-50.   Under Florida law, an insurance policy is "a

written contract of insurance or written agreement for or effecting insurance, or the certificate thereof". Fla. Stat. § 627.402.

### III.   Analysis

According to the language of the COI, the NITACA Policy provides coverage for two categories of truck drivers: Owner-Operators and Contract Drivers.   Pastukov applied for coverage as a Contract Driver.   (Doc. 55-9 at 1).   Atlantic contends that he did not meet the requirements for either category, and therefore he was never entitled to coverage.

Pastukov does not argue that he ever satisfied the requirements to be an Owner-Operator or Contract Driver.[3]   Instead, Pastukov argues that the COI is ambiguous, and this ambiguity must be resolved in favor of coverage.   (Doc. 46 at 19-22).   Specifically, Pastukov contends that the COI is ambiguous because it lists him, on the first page, as having coverage as a Contract Driver, while elsewhere the COI sets forth qualifications for Contract Drivers, such as working for an Owner-Operator, that he did not satisfy.   (Doc. 46 at 20).

While it is true that Florida law requires that courts construe ambiguous insurance policy provisions in favor of policyholders, *Ruderman*, 117 So. 3d at 949-50, that principle does not apply here.   There is no interpretation of the language of the COI under which Pastukov qualifies for coverage, either as a Contract Driver or an Owner-Operator.   Pastukov's application incorrectly describes him as meeting the requirements to be a Contract Driver.   (Doc. 55-9 at 1).

---

[3] It is undisputed that Pastukov was not an Owner-Operator.   (Doc. 55 at 5 n. 2). To qualify as a Contract Driver, the COI specifies that the individual must, inter alia, "be authorized by an Owner-Operator to operate a power unit owned or leased by an Owner-Operator."   (Doc. 46-1 at 131).   During the relevant time period, Pastukov was driving for National Shipping. Owner-Operators are required to "have a valid Commercial Driver's License or the required license for the vehicle they are assigned to operate" (Doc. 46-1 at 131) – a requirement that National Shipping could not satisfy.   Because National Shipping could not meet the requirements to be an Owner-Operator, Pastukov did not meet the requirements to be a Contract Driver.

The fact that Atlantic did not discover Pastukov's ineligibility before he was listed as covered on the COI does not create ambiguity that requires interpretation.

In his reply, Pastukov argues that Atlantic waived its right to assert that he was not eligible for coverage.   He says that, based on the information he provided in his application, Atlantic had notice of his ineligibility before issuing the COI.   (Doc. 58 at 8).   Specifically, the application form contained the words "Contracted by (Name of Company)" followed by a blank, which Pastukov filled in with "National Shipping".   (Doc. 55-9 at 1).   In the COI, Pastukov was described as

> Contract Driver
> Under Contract to Independent Owner-Operator:
> National Shipping Inc [sic]

(Doc. 146-1 at 128).   As discussed *supra*, despite the inclusion of this language in the COI, a corporation such as National Shipping could not qualify an Owner-Operator, which meant that Pastukov could not meet the requirements to be a Contract Driver.   Thus, Pastukov argues, Atlantic – either directly or through its agent, 5Star, which issued the COI – knew from the outset that he was not eligible to be a Contract Driver, and therefore issuance of the COI constitutes a waiver of the eligibility issue.   Pastukov also notes that, despite having this information regarding his inability to qualify as a Contract Driver, Atlantic continued collecting premium payments for almost two years before denying him coverage.   (Doc. 58 at 7).   This conduct by Atlantic, he asserts, constituted "a waiver of its right to assert that Sergey Pastukov was not eligible for coverage."   (Doc. 58 at 7).

Pastukov's argument that Atlantic waived this issue (or is estopped from presenting it) fails for at least two reasons.   First, although Atlantic asserted in the Complaint that Pastukov had not been eligible for coverage (Doc. 1 at 14), Pastukov did not raise waiver, estoppel, or any other

affirmative defenses in his answer (Doc. 58).[4]   The issue has therefore been waived by Pastukov.

*See* Fed. R. Civ. P. 8(c) (requiring that, in responding to a preceding pleading, parties must

affirmatively state "any avoidance or affirmative defense, including … estoppel [and] waiver.").

In addition, for purposes of application of the doctrines of estoppel and waiver in insurance

cases, Florida law distinguishes between provisions of forfeiture and provisions of coverage.   The

general rule is that waiver or estoppel may be used defensively by the insured to prevent a

forfeiture of coverage but not affirmatively to create or extend coverage.[5]   *Crown Life Ins. Co. v.*

*McBride*, 517 So. 2d 660, 661 (Fla. 1987).

> The distinction between a provision of forfeiture and one of coverage has been said to turn upon whether the loss was covered by the contract in the first instance and is asserted to have been lost or nullified as a consequence of the actions of the insured; if this is the case, then the provision is one of forfeiture. *See Peters v. Great Am. Ins. Co.*, *N.Y.*, 177 F.2d 773, 779 (4th Cir. 1949) ("'If by the contract the insured [sic-insurer] assumed a stated risk primarily, and provided for a forfeiture upon the happening of certain conditions, its right to claim such forfeiture may be waived; but, where it expressly and specifically declined to assume such risk, it cannot by its conduct be held to have waived itself into making a contract which had not been entered into.'" (quoting *Keistler Co. v. Aetna Ins. Co., Hartford, Conn.*, 124 S.C. 32, 117 S.E. 70, 75 (1923))); *Royal Maccabees Life Ins. Co. v. James*, 146 S.W.3d 340, 350 (Tex.Ct.App. 2004) ("'Whereas waiver and estoppel may operate to avoid forfeiture of a policy and may prevent an insurance company from avoiding payment because of the failure on the part of the insured to comply with some requirement of the policy, waiver and estoppel cannot enlarge the risks covered by a policy.'" (quoting *Minn. Mut. Life Ins. Co. v. Morse*, 487 S.W.2d 317, 320 (Tex. 1972))).

---

[4]  Pastukov also did not raise these issues in the parties' Joint Pretrial Statement (Doc. 65).

[5]  Florida law recognizes a narrow exception to this general rule.   Promissory estoppel may be used to create insurance coverage where a refusal to do so would sanction fraud or other injustice.   *McBride*, 517 So. 2d at 662.   There are no facts in evidence that would support application of this exception here, and Pastukov has not argued that it applies.

*Lloyds Underwriters at London v. Keystone Equip. Fin. Corp.*, 25 So. 3d 89, 92 (Fla. Dist. Ct. App. 2009). In the instant case, the question of whether Pastukov met the requirements to be a Contract Driver does not turn on some action he took or failed to take. It is an issue of coverage, not an issue of forfeiture, and Atlantic cannot have waived it or be estopped from raising it.

**IV.    Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 46) filed by the Defendant, Sergey Pastukov, is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 26, 2018.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE